United States District Court
Southern District of Texas
**ENTERED**
March 08, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROBERT PROSPER, JR., a/k/a      §
ROBERT EARL PROSPER, JR.,       §
                                §
        *Plaintiff,*            §
                                §
v.                              §          CIVIL ACTION NO. H-20-0583
                                §
ADAM ALVAREZ., *et al.,*        §
                                §
        *Defendants.*           §

**MEMORANDUM OPINION AND ORDER**

Plaintiff, a Washington County pretrial detainee at the time of filing, filed an amended complaint under 42 U.S.C. § 1983 against Houston Police Department ("HPD") officers Adam Alvarez and Darren Glass. (Docket Entry No. 35.) He proceeds *pro se* and *in forma pauperis*. As ordered by the Court, plaintiff filed a more definite statement (Docket Entry No. 37) and supplemental more definite statement (Docket Entry No. 40) of the facts and claims in his lawsuit.[1] Plaintiff claims that the defendant HPD officers violated his constitutional rights and various state laws on October 15, 2017, in Harris County, Texas.

---

[1] Plaintiff executed his more definite statement on March 9, 2021. (Docket Entry No. 37, p. 6.) He subsequently executed a second version of the more definite statement on March 18, 2021. (Docket Entry No. 38, p. 6.) Plaintiff did not request or obtain leave of court to file an amended version of his more definite statement. The second version (Docket Entry No. 38) is an unauthorized pleading and is **ORDERED STRICKEN FROM THE RECORD**. The supplemental more definite statement (Docket Entry No. 40), however, was authorized and is properly before the Court.

Pending before the Court are defendant Alvarez's Federal Rule of Civil Procedure ("FRCP") 12(b)(6) motion to dismiss (Docket Entry No. 44), to which plaintiff filed a response (Docket Entry No. 45) and Alvarez filed a reply (Docket Entry No. 47); and defendant Glass's FRCP 12(b)(6) motion to dismiss (Docket Entry No. 46), to which plaintiff did not respond.

Having considered the motions to dismiss, the response, the reply, the amended complaint, the more definite statement and supplemental more definite statement, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the motions to dismiss and **DISMISSES** this lawsuit for the reasons shown below.

## I.  BACKGROUND AND CLAIMS

Plaintiff claims in his amended complaint, more definite statement, and supplemental more definite statement that defendant HPD officers Alvarez and Glass violated his constitutional rights in Harris County, Texas, on October 15, 2017.  He states that on that date, the defendants parked their patrol car in front of his vehicle and falsely told him the vehicle did not display a VIN plate on the dash.  Defendant Alvarez restrained him with handcuffs and placed him in the patrol vehicle while they searched his vehicle and inspected the vehicle's registration and title papers.  Plaintiff claims that the officers unlawfully seized and restrained him, causing him mental anguish and injury to his wrist with a too-tight handcuff.  He seeks a declaratory judgment with compensatory and punitive damages. (Docket Entry No. 35, p. 6.)

2

## II.  LEGAL STANDARDS

"To survive a motion to dismiss [under FRCP 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Thus, while a complaint need not contain detailed factual allegations, it must go beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*  The courts should neither "strain to find inferences favorable to the plaintiff" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

In reviewing a FRCP 12(b)(6) motion, the courts must limit a review to the contents of the pleadings, including attachments. *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The courts may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* In addition to facts alleged in the pleadings, the courts may also consider matters over which judicial notice may be taken.

*Hall v. Hodgkin*, 305 F. App'x 224, 227 (5th Cir. 2008); *se also Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996).

## III.  ANALYSIS

A.    <u>Limitations</u>

Defendants Alvarez and Glass argue in their respective motions to dismiss that plaintiff's claims against them are barred by the applicable two-year statute of limitations. They argue that the incident made the basis of plaintiff's claims occurred, and his causes of action accrued, on October 15, 2017, but that plaintiff did not file this lawsuit until February 14, 2020.  A FRCP 12(b)(6) motion is a proper procedural vehicle to seek dismissal when, on the face of a plaintiff's pleading, a claim is barred by the controlling statute of limitations. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

42 U.S.C. §1983 does not include a separate statute of limitations for lawsuits brought under its provisions, and section 1983 lawsuits filed in Texas are governed by Texas personal injury limitations.  *See Wallace v. Kato*, 549 U.S. 384 (2007); *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). Texas has a 2-year statute of limitations for personal injury claims and thus, plaintiff had two years to file suit from the date his claim accrued.  *See Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). The incident made the basis of plaintiff's claims against Alvarez and Glass occurred on October 15, 2017, and his claims against them accrued on the same date.

The Court's docket shows that the instant lawsuit commenced as a miscellaneous case, *Prosper v. Fredrickson*, C.A. No. 4:19-mc-2751 (S.D. Tex.), filed on or about September 13, 2019. On that date, plaintiff filed an application to proceed *in forma pauperis* with a copy of his complaint. The miscellaneous docket judge granted plaintiff leave to proceed *in forma pauperis* on February 14, 2020, and the case was re-docketed under its current case number. Fifth Circuit Court of Appeals precedent holds that limitations is tolled during the pendency of a successful pauper application, and a complaint is deemed filed on the date it is tendered with the application. *See Castillo v. Blanco*, 300 F. App'x 463, 468 (5th Cir. 2009). Accordingly, and based on the Court's review of its own docket, the Court finds as a matter of public record that plaintiff's lawsuit in this case was filed no later than September 13, 2019, within the two-year statute of limitations.

As alternative grounds for holding plaintiff's lawsuit barred by limitations, Alvarez and Glass note that this case was dismissed without prejudice on April 8, 2020, pursuant to the involuntary dismissal provisions of FRCP 41(b) for plaintiff's failure to provide a current address of record. The Court expressly stated in the dismissal order that "relief from this order may be granted in accordance with Rule 60(b)." Under the provisions of Rule 41(b), the involuntary dismissal operated as an adjudication on the merits.

Plaintiff apprised the Court of his updated non-custodial address of record on May 18, 2020, and moved to reopen his case on June 26, 2020. The Court granted relief and reopened

this case on February 23, 2021. The Court construes plaintiff's motion to reopen, and the Court's order granting relief, as proceedings under FRCP 60(b).

Defendants correctly contend that involuntary dismissal of the case for want of prosecution effectively dismissed the case with prejudice, as limitations had expired in October 2019. Defendants also correctly argue that plaintiff would not be able to re-file his lawsuit at this time due to the limitations bar. Defendants incorrectly imply, however, that the Court's order reopening the case had the same effect as would the filing of a new lawsuit for purposes of the limitations bar. That is, defendants contend that plaintiff's instant lawsuit is barred by limitations because it was reopened after limitations had expired. Defendants proffer no authority for their contention that "reinstatement" under FRCP 60(b) and "re-filing" of an involuntarily-dismissed lawsuit carry the same limitations consequences in this instance, and the Court finds none. Plaintiff's lawsuit was timely filed in 2019, and its subsequent involuntary dismissal under FRCP 41(b) and reinstatement under FRCP 60(b) did not render it untimely filed.

For these reasons, defendants are not entitled to dismissal of plaintiff's lawsuit as barred by the applicable two-year statute of limitations. The motions to dismiss are **DENIED IN PART** as to defendants' limitations defense.

B.      Investigative Detention/Search

In his amended complaint, plaintiff sues Alvarez and Glass in their individual capacities under section 1983 for illegal detention, battery of his person, false imprisonment,

6

and unlawful restraint. (Docket Entry No. 35, p. 1.) Plaintiff sets forth the following factual

allegations in pleading his claims against Alvarez and Glass:

> On or about October 15, 2017 Plaintiff ROBERT PROSPER was in his vehicle
> located at 5300 N McCarty street. The shell truck stop was an unincorporated
> or privately owned business. Plaintiff noticed a police car driven by
> Defendants Alvarez and Glass parked in front of Plaintiff's vehicle.
> Defendant Alvarez approached Plaintiff's vehicle and began questioning
> Plaintiff. Defendant Alvarez stated to Plaintiff, "you [*sic*] being detained that
> vehicle don't [*sic*] have VIN plate on it." Defendant Alvarez lied to obtain the
> search warrant the vehicle's identification plate was present on Plaintiff's
> vehicle.[2] The encounter was captured on Plaintiff's cell phone video[.]
> Defendant Alvarez ordered Plaintiff to exit the vehicle, Plaintiff stated "this
> van ain't stolen here's the title here.["] Defendant Alvarez illegally or
> unlawfully hand cuffed Plaintiff's hand behind his back. Defendant Alvarez
> illegally or unlawfully searched Plaintiff's persons [*sic*] finding nothing.
> Defendants Alvarez and Glass falsely imprisoned Plaintiff when they placed
> him inside the police car. Defendants Alvarez and Glass illegally or
> unlawfully searched Plaintiff's vehicle finding nothing. Defendants Alvarez
> and Glass illegally or unlawfully seized Plaintiff's papers and property.

(Docket Entry No. 35, pp. 2–3.)

In his more definite statement, plaintiff asserts the following relevant factual

allegations:

> Officer Alvarez gave false reasons for detaining and searching Plaintiff's
> [p]erson and vehicle. The vin plate was present on Plaintiff's vehicle. Alvarez
> said the Plaintiff was being detained because the vin plate was [m]issing from
> the dash. Officer Alvarez took action based on false reasons.

(Docket Entry No. 37, p. 2.) Although plaintiff states he attached as an exhibit to the more

definite statement a photo of the vehicle dashboard showing that the VIN plate was present,

the exhibit is a grainy copy that reveals no details and provides no support for his allegation.

---

[2]There was no search warrant in this case.

(Docket Entry No. 37-1, Exhibit A-1.) Even if the VIN plate were discernable in the exhibit, the exhibit does not establish that the plate was in place on October 15, 2017.

In short, plaintiff contends that Alvarez and Glass violated his Fourth Amendment rights because a VIN plate was on the dashboard, and the defendants caused him physical injury by placing the handcuffs on too tightly.

Defendants Alvarez and Glass seek dismissal of plaintiff's Fourth Amendment claims under the affirmative defense of qualified immunity. (Docket Entry No. 44, pp. 21–23.) To state a claim under section 1983, a plaintiff must establish a violation of his constitutional or other federal right that was committed by someone acting under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). The qualified immunity defense to such claims shields government officials who perform discretionary functions from suit and liability under section 1983, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

"Once a defendant invokes the qualified immunity defense, the plaintiff carries the burden of demonstrating its inapplicability." *Floyd v. City of Kenner*, 351 F. App'x 890, 893 (5th Cir. 2009). The qualified immunity analysis consists of two steps. The first inquiry is whether the officer's alleged conduct violated a federal right. *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). The second inquiry is whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the

unlawfulness of his conduct. *Id.* Under the second prong, "[a]n officer is entitled to qualified immunity unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution." *Linicomn v. Hill*, 902 F.3d 529, 538–39 (5th Cir. 2018) (cleaned up). The Supreme Court of the United States has made clear that this does not "require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A court need not decide the first prong before the second, and it may decide the case solely on the basis that the right was not clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236–37, 243 (2009).

The Fourth Amendment guarantees the rights of individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment is concerned with ensuring that the scope of a given detention "is reasonable under the totality of the circumstances." *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004). To be reasonable, a warrantless arrest must ordinarily be supported by probable cause. *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (per curiam). However, officers "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). To fall within this exception to the usual probable cause requirement, an investigative detention "must be carefully tailored to its underlying justification." *Florida*

9

*v. Royer*, 460 U.S. 491, 498, 500 (1983).  Whether a particular stop is reasonable depends on the facts of the case, and the court is to consider the information available to the officers at the time of the decision to stop a person.  *See Turner v. Lieutenant Driver*, 848 F.3d 678, 691 (5th Cir. 2017).

However, "to be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (cleaned up). An officer's mistake of fact or law may provide the basis for reasonable suspicion so long as the mistake is reasonable.  *Id.*

Attached as an exhibit to plaintiff's more definite statement is a partial copy of the Houston Police Department narrative prepared by Alvarez as to the encounter with plaintiff on October 15, 2017.  (Docket Entry No. 37-1, Exhibit A.)  Alvarez reports in the narrative in relevant part as follows:

> I Officer A. Alvarez observed the above location to be a Shell truck stop located at the 5300 block of N McCarty St in 9C30's beat.  N McCarty runs north and south bound with the truck stop on the west side of the road.  The blk Dodge van was parked on the east side of the parking lot in between two tractor trailers.
>
> I gathered the necessary information needed for this report from Prosper, Robert (ssp. #01) while on scene.  Upon arrival I observed a blk Dodge Ram 1500 van that was parked in between two tractor trailers.  *The location is known for numerous crime activity.  The van did not have no [sic] front plate or registration sticker on the front windshield.  I approached the vehicle and noticed that the VIN plate had been removed from the dash.*  I ran the Mississippi plate [deleted] which came back clr to a 02 Dodge van.

10

*I [sic] appeared as if someone was living inside the van.* As we approached the vehicle a second time my partner D. Glass noticed a male get up from inside the van. *I asked the male to step out in which he did not want to stating to me why? The male began moving a lot to where we could not see what he was doing inside the van because the windows were covered.* Since some of the windows were broken I was able to unlock the passenger front door, then the side panel door.

*Once I opened the side cargo door the blk male continued to move where I detained him to further complete my investigation. When I opened the front passenger door I noticed that the steering column was busted.* Prior to placing the male into my custody he pulled out his phone and began recording us stating that he was going to put us on the news. I multiple times tried to ask the male about the vehicle VIN plate who was no [sic] coherent with anything I was saying. The male felt like he was being harassed by police. *I placed the male into the back seat of my patrol vehicle where he did not want to answer any of my questions* because I was harassing him that he stole the van.

*I tried to explain to the male that I am trying to figure* out why the van did not have a VIN plate and the steering column was broken. The male stated that he had the title, but did not want to tell me. Robert the male complained that his handcuffs were hurting him when they were loose on him already. I even loosen [sic] up the cuffs, which was not good enough for him. The male was stuck that on [sic] that police were harassing him. I contacted auto theft and spoke with Officer Vaughan advising him that the vehicle did not have a VIN plate nor a relocated VIN. Although the van had a plate matching the vehicle description, it had to be towed to Dart Lot because of the missing VIN plate.

*I released Robert once I figured out that he was clear* and the little I could about the van.

(Docket Entry No. 37-1, emphasis added.)

Plaintiff's own factual allegations, as well as the exhibits attached to his amended more definite statement, show that Alvarez and Glass evinced a reasonable suspicion for detaining and investigating plaintiff and his vehicle on October 15, 2017. They were aware that the vehicle's location at the truck stop was known for criminal activity, and that the

vehicle did not have a front license plate, a registration sticker on the windshield, or a VIN plate on the dash.  Moreover, the windows, some of which were broken, were covered over and someone appeared to be living in the vehicle.  When they observed plaintiff moving around in the van, they ordered him to exit; he refused and continuing moving around.  The officers unlocked a door through a broken window, and noticed a broken steering column upon opening the door.  Plaintiff accused the officers of harassing him and refused to answer their questions, opting instead to record the encounter on his cell phone.

The officers detained plaintiff for further investigation, handcuffed him, and placed in him their patrol car while undertaking a search of the vehicle.  Title papers in a glove compartment showed that plaintiff owned the vehicle, and a license plate check was cleared.  The officers released plaintiff but impounded the vehicle for lack of the dash VIN plate.  These facts do not demonstrate that the officers violated plaintiff's Fourth Amendment rights by undertaking an investigational detention based on a reasonable suspicion of actual or potential criminal activity.  Although plaintiff alleges that the VIN plate was on the dash, his dispute of that fact does not negate other factors relied upon by the officers for reasonable suspicion in undertaking the investigational detention.  Moreover, that the receipt from the vehicle impound reflects a VIN number does not mean that the dash VIN plate was in place; the VIN number would also appear on the title papers located by the officers in the vehicle.

It cannot be said that the detention and search were objectively unreasonable in light of clearly established law.  To satisfy this test, plaintiff was required to demonstrate that

every reasonable officer would understand that detaining plaintiff and searching his van violated the law.  Plaintiff makes no such showing.

Because plaintiff fails to meet his burden as to both prongs of the qualified immunity defense, Alvarez and Glass are entitled to qualified immunity.  Defendants Alvarez and Glass's motions to dismiss are **GRANTED IN PART** and plaintiff's Fourth Amendment claims as to the detention and search are **DISMISSED WITH PREJUDICE**.

C.   Excessive Force

Plaintiff alleges that Alvarez caused him physical injury by placing his handcuffs on too tightly.  Construed liberally, plaintiff's allegations raise a Fourth Amendment claim for use of excessive force.

Defendants move for dismissal of plaintiff's excessive force claim, premised on qualified immunity and failure to state a viable claim for relief.  (Docket Entry No. 44, pp. 4, 20–21); (Docket Entry No. 46, pp. 4, 20–22.)  Plaintiff, however, did not respond to the defendants' arguments for dismissal of the claim, and the motion to dismiss is unopposed as to plaintiff's excessive force claim.

Regardless, plaintiff's exhibit of Alvarez's incident report shows that, "Robert the male complained that his handcuffs were hurting him when they were loose on him already. I even loosen [sic] up the cuffs, which was not good enough for him."  (Docket Entry No. 37-1, Exhibit A.)  Plaintiff's allegations do not raise a viable Fourth Amendment excessive force claim under section 1983.  Even assuming such a violation, plaintiff does not

13

demonstrate that every reasonable officer would understand that the manner in which plaintiff's handcuffs were placed violated the law.

As recently stated by the United States Court of Appeals for the Fifth Circuit,

> The district court concluded that the officers were entitled to qualified immunity on the excessive-force claim, and again, we agree. The only force the deputies used here was handcuffing, and Isaac has not demonstrated that the deputies violated clearly established law by handcuffing him. Rather, our court has been hesitant to conclude that handcuffing alone amounts to excessive force. On the contrary, we have held that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007); *see also Tarver v. City of Edna*, 410 F.3d 745, 751–52 (5th Cir. 2005) (holding that " 'acute contusions of the wrist' and psychological injury from being handcuffed" were *de minimis* and insufficient to establish excessive force). In the absence of precedent establishing that handcuffing Isaac, under these circumstances, violates clearly established law, the deputies are entitled to qualified immunity.

*Pollard v. Campbell*, 2023 WL 234763, *3 (5th Cir. Jan. 18, 2023).

Plaintiff states in his supplemental more definite statement that he sustained "swelling in wrist and hand, numbness, weakness, pain and shoulder pain." (Docket Entry No. 40, p. 2.) However, his recitation of his medical condition included injuries sustained in an unrelated "encounter" he had with police officers on May 1, 2022, wherein he reported to the LBJ Emergency Center of a fall, back pain, neck pain, and general pain. He was examined, x-rayed, prescribed Tylenol, and released. *Id.*, p. 4. Plaintiff does not distinguish his alleged injuries as between the two incidents.

Defendants Alvarez and Glass's motions to dismiss are **GRANTED IN PART** and plaintiff's Fourth Amendment excessive force claims against them are **DISMISSED WITH PREJUDICE**.

D.    B.L. Fredrickson

Plaintiff references a third Houston Police Department officer, B.L. Fredrickson, in his pleadings.  In setting forth his claims against this officer, plaintiff asserts in his more definite statement that Fredrickson unlawfully arrested him for driving under the influence in Harris County, Texas, on July 26, 2016.  (Docket Entry No. 37, p. 3.)  The Court did not authorize service of process on Fredrickson and he is not before the Court.

Plaintiff's claims against Fredrickson arise from separate events and transactions that cannot be joined with his claims against Alvarez and Glass in this lawsuit.  FRCP 18(a) allows a plaintiff to join as many claims as the party has against a specific party.  FRCP 20 allows the joinder of several parties if the claims arose out of a single transaction and contain a specific question of fact or law common to all defendants.

Plaintiff pleads claims against Fredrickson that arose out of different transactions and against unrelated defendants, and his amended complaint fails to comport with FRCP 18(a) and FRCP 20.  *See* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1583 (2d ed. 1990) (noting that, under FRCP 18(a) and FRCP 20, if the claims arise out of different transactions and do not involve all defendants, joinder should not be allowed).  Although *pro se* pleadings are entitled to a liberal construction, a *pro*

*se* litigant is still required to abide by the rules that govern the federal courts. *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013).

Accordingly, plaintiff's claims against Fredrickson are **DISMISSED WITHOUT PREJUDICE** for improper joinder under FRCP 18(a) and FRCP 20. Should plaintiff intend to pursue his claims against Fredrickson, he must do so through the filing of a separate lawsuit in a court of proper jurisdiction. To the extent limitations had not expired at the time plaintiff filed the instant lawsuit naming Fredrickson as a defendant, limitations are **TOLLED** for 60 days so that plaintiff may, at his election, file a separate lawsuit against Fredrickson. The Court expresses no opinion as to the merits, if any, of plaintiff's claims against Fredrickson or whether limitations had expired at the time plaintiff filed this lawsuit naming Fredrickson as a defendant.

E.     Harris County, City of Houston

On February 23, 2021, the Court dismissed with prejudice plaintiff's claims against Harris County and the City of Houston that were raised in his amended complaint. Plaintiff had been granted leave to file the amended complaint on February 23, 2021, and the amended complaint was docketed as Docket Entry No. 35. Thus, the claims against Harris County and the City of Houston that were dismissed with prejudice on February 23, 2021, were again pleaded by plaintiff in the amended complaint. Plaintiff cannot replead these claims, as they were dismissed with prejudice. The claims are **STRICKEN FROM THE AMENDED COMPLAINT**.

For clarification purposes, the Court reiterates that no claims against Harris County or the City of Houston are pending at this time.

F.     <u>State Law Claims</u>

The Court, having dismissed plaintiff's federal claims, has the discretion to decline to exercise jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367(c)(3); *see also Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994) ("When all federal claims are dismissed . . . the district court enjoys wide discretion in determining whether to retain jurisdiction over the remaining state law claims."). The Court exercises that discretion here and plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**. To the extent plaintiff's claim were not barred by limitations at the time this lawsuit was filed, plaintiff has sixty days to refile his state law claims in a state court of proper jurisdiction.

## IV.  CONCLUSION

For the above reasons, the Court **ORDERS** as follows:

1.    Defendant Adam Alvarez's motion to dismiss (Docket Entry No. 44) is **GRANTED IN PART** and **DENIED IN PART**, and plaintiff's claims against Alvarez are **DISMISSED WITH PREJUDICE**.

2.    Defendant Darren Glass's motion to dismiss (Docket Entry No. 46) is **GRANTED IN PART** and **DENIED IN PART**, and plaintiff's claims against Glass are **DISMISSED WITH PREJUDICE**.

3.    Plaintiff's claims for monetary damages against the defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE**.

4.    Plaintiff's claims against B.L. Fredrickson are **DISMISSED WITHOUT PREJUDICE**.

5.    Plaintiff's claims against Harris County and the City of Houston are **STRICKEN FROM THE AMENDED COMPLAINT** as improper repleading of claims dismissed by the Court with prejudice.

6.    Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

7.    Any and all pending motions are **DISMISSED AS MOOT**.

Signed at Houston, Texas, on _____ MAR 0 8 2023 _____.

_____
ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE